Christopher George CHRISTOS, Robert L. Bailey, James M. Pope, Lorin W. Ross, George A. Krist, Alan M. Schwartzman, Robert A. Stokes, Michael S. Cohen, and James O. Sloan, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 01–5051.

United States Court of Appeals, Federal Circuit.

DECIDED: Aug. 22, 2002.

Richard E. Miley, of North Augusta, SC, argued for plaintiffs-appellants.

R. Alan Miller, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; James M. Kinsella, Deputy Director. Of counsel on the brief was Lucy Knowles, Assistant Chief Counsel, Office of Chief Counsel, Savannah River Operations, Department of Energy, of Aiken, SC.

Before NEWMAN, MICHEL, and GAJARSA, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Appellants Christopher George Christos, Robert L. Bailey, James M. Pope, Lorin W. Ross, George A. Krist, Alan M. Schwartzman, Robert A. Stokes, Michael S. Cohen, and James O. Sloan (together "Christos") appeal the decision of the United States Court of Federal Claims dismissing their complaint.[1] We affirm the dismissal.

## BACKGROUND

Appellants were employees of the Westinghouse Savannah River Company ("WSRC"), a subsidiary of the Westinghouse Electric Corporation. WSRC operated the Savannah River Site, a defense nuclear facility in South Carolina, under a cost-reimbursement management and operation contract entered into in 1988 between WSRC and the United States Department of Energy ("DOE"). In 1996 the management arrangement was changed, and a new contract was entered between the DOE and a new entity consisting of WSRC and three other companies. Thereafter WSRC reduced its workforce at Savannah River. The 1988 contract contained provisions relevant to employees, including:

1. Except as provided in paragraph 2, an employee ... whose services are no longer required under this contract due to reduction in workforce, shall receive a severance pay allowance of one week's base salary for each full year of service up to a maximum of 26 weeks....

2. No employee (1) who accepts transfer to another facility, subsidiary, or affiliate of the Contractor, (2) who is offered employment at comparable pay and benefits by a successor contractor, (3) who resigns, (4) who is discharged for cause, or (5) who retires normally or under the early retirement provisions of a pension or retirement plan of the Contractor, will be eligible for severance pay.

---

1. *Christos v. United States,* 48 Fed. Cl. 469 (2000).

The 1996 contract contained the same provisions.

All of the appellants had at least twenty-five years of service with Westinghouse companies and were over fifty years old; all were offered, and accepted, a special early retirement option with unreduced pension from Westinghouse Electric, upon the WSRC reductions at Savannah River. All but one of the appellants signed a waiver of eligibility for severance pay, in confirmation of his election of the special retirement option.

The appellants now claim entitlement to severance pay from the United States, directly or through Westinghouse, on the basis that Westinghouse had requested and received payment from DOE in the amount of $702,464, which was the calculated amount of severance pay for the appellants and other employees who elected the special retirement option. Christos states that the appellants (and other members of the class) should have received this "diverted" severance money, and that it is not controlling that they elected the special early retirement with unreduced pension instead of severance pay. The appellants argue that prior early retirement plans included severance pay, that they were pressed to make the waiver decision over the Christmas season, and that DOE never formally approved the Westinghouse plan to receive, as cost reimbursal, the severance funds accrued to these employees.

This issue was previously litigated between these employees and WSRC in the United States District Court for the District of South Carolina. The district court denied the claim and the Fourth Circuit affirmed, explaining:

> In short, the provision in the contract between Westinghouse Savannah and the DOE referring to severance pay simply represented an agreement that severance payments made by Westinghouse Savannah would be costs that are reimbursable by the DOE. There is no indication in the contract that this provision was intended to create a direct benefit to laid-off employees of Westinghouse Savannah.

*Stokes v. Westinghouse Savannah River Company*, 206 F.3d 420, 428–29 (4th Cir. 2000). *See also Christos v. WSRC*, No. 00–2007, 2001 WL 672056 (4th Cir. June 15, 2001) (unpublished) (sustaining the legality of Westinghouse's offer of a choice of either immediate early retirement with full pension and no severance pay, or severance pay and later pension at age 65). The Fourth Circuit observed that the plaintiffs were not proposing to relinquish their enhanced early pension, but also sought the additional severance payment.

The Court of Federal Claims, having stayed this action until completion of the Fourth Circuit proceedings, then ruled that there was no basis on which Christos could recover this severance pay, or damages measured thereby, from the United States.

## DISCUSSION

Christos argues that § 3161 of the 1992 National Defense Authorization Act ("NDAA"), codified at 42 U.S.C. §§ 7274h and j, and the DOE 1995 Workforce Restructuring Plan, which Christos characterizes as agency regulations issued pursuant to the NDAA, are money-mandating provisions in that they require the payment of severance pay to laid-off employees. *See United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) ("the asserted entitlement to money

damages depends upon whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained' ") (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967)). *See also, e.g., Hamlet v. United States,* 63 F.3d 1097, 1102 (Fed.Cir.1995) (a money-mandating regulation is one that "can be fairly interpreted to create a substantive right to monetary compensation from the United States"). Christos states that the government violated provisions of the NDAA and the Workforce Plan when it failed to require WSRC to pass the severance pay reimbursements directly to the appellants.

■ The Court of Federal Claims held that no provision in the NDAA or the 1995 Workforce Restructuring Plan established a direct obligation of the United States to employees of WSRC, or changed the rule, represented by *Robo Wash, Inc. v. United States,* 223 Ct.Cl. 693, 695 (1980), that employees of a contractor can not maintain an employment suit against the United States. We agree that neither the NDAA nor the Workforce Restructuring Plan created a statutory or regulatory monetary obligation upon the United States flowing to these employees of WSRC. The Court of Federal Claims also correctly held that these documents did not override or render illegal or irrelevant the waiver of severance pay by these employees in electing the early retirement and pension option offered by Westinghouse.

■ Appellants also raise a contract theory of recovery, stating that they are third party beneficiaries of the 1988 and 1996 contracts between WSRC and the United States. Appellants state that these contracts entitle them to severance pay,

and thereby establish a cause of action for recovery from the United States. Third party beneficiary status may arise when a contract reflects the express or implied intention of the contracting parties to benefit the third party. *See Roedler v. Department of Energy,* 255 F.3d 1347, 1352 (Fed.Cir.2001) ("To establish a right of action by a third person who is not a party to or identified in the contract as a beneficiary of its performance, the contract must show the intention of the contracting parties to provide a benefit to that person. When the intent to benefit the third party is not expressly stated in the contract, evidence thereof may be adduced.")

■ We need not decide whether the contractual provisions between DOE and WSRC concerning severance pay "reflect the express or implied intention of the parties to benefit the third-party," the words of *Montana v. United States,* 124 F.3d 1269, 1273 (Fed.Cir.1997) on which the appellants ground their claim, because even on the appellants' theory they can not prevail. The contracts between DOE and WSRC provide that employees who retire under early retirement provisions are not eligible for severance pay, and the Workforce Restructuring Plan in effect when these appellants retired was in accord with that provision. All of the provisions of a contract must be read in harmony, whether interpreting the contract or deciding a question of beneficial interest. When these plaintiffs elected the special retirement option with early unreduced pension, they acknowledged that this replaced severance pay. Even without such acknowledgment or express waiver, their election would work the same result by operation of law. Thus they would have no entitlement on a third party beneficiary theory, for no contractual obligation concerning these employees remained unsatisfied.

Similarly, there is no "agency" theory whereby these plaintiffs may both retain their elected early retirement benefits from Westinghouse, and recover severance pay from the United States. The Court of Federal Claims did not err in rejecting this and the other theories of obligation or damages proffered by Christos.

*AFFIRMED.*